Filed 7/24/26  P. v. Hernandez CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B345569 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. XCNBA312691 |
| ARMANDO HERNANDEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Charlaine F. Olmedo, Judge.  Affirmed.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant and appellant Armando Hernandez of the second degree murder of 16-year-old Giovanny Mancia. More than a decade later, Hernandez filed a petition for resentencing under Penal Code section 1172.6.[1] The court summarily denied the petition on the ground Hernandez had not been convicted under either the felony murder rule or the natural and probable consequences doctrine. The Legislature subsequently made changes to the law that eliminated murder convictions based on imputed malice. In response to those changes, Hernandez filed a new petition for resentencing, this time asserting the jury may have imputed malice to him. The trial court summarily denied the petition at the prima facie stage.

On appeal, Hernandez contends he made a prima facie showing and is entitled to an evidentiary hearing. He relies on cases in which courts have observed the standard CALCRIM and CALJIC jury instructions were not tailored to a theory of aiding and abetting implied malice murder. Hernandez argues that, because the trial court instructed his jury with the standard CALCRIM instructions, it is possible the jury convicted him of murder without having found he personally harbored malice.

We conclude the instructions required the jury to find Hernandez possessed malice to convict him of aiding and abetting any form of murder, including implied malice murder. The

---

[1] References are to the Penal Code. Hernandez filed his petition under former section 1170.95. Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.) (*People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2.) For the sake of simplicity, we refer only to section 1172.6.

record of conviction demonstrates Hernandez is not entitled to relief under section 1172.6 as a matter of law. Therefore, we affirm the order denying his petition for resentencing.

**FACTS AND PROCEDURAL BACKGROUND**

**1. *Hernandez's conviction for second degree murder***

In 2007 the People charged Hernandez with a single count of murder. A jury convicted Hernandez of second degree murder and found true allegations that, in the commission of the crime, a principal personally and intentionally used and discharged a firearm causing death and that Hernandez acted to benefit a criminal street gang. The trial court sentenced Hernandez to 40 years to life in the state prison. In 2011, we affirmed Hernandez's conviction. (*People v. Hernandez* (Apr. 25, 2011, B215707) [nonpub. opn.] (*Hernandez I*).)

According to our opinion in Hernandez's direct appeal,[2] around 5:30 p.m. on April 5, 2006, Hernandez drove his gold Toyota Camry down 49th Street in Los Angeles. Two fellow members of Hernandez's gang, known as Rascal and Flaco, were passengers in the car. Mancia was sitting in a parked car with two other people. When Rascal saw them, he said, "What? Who's those fools?" Rascal and Flaco got out of the car. Flaco shot Mancia in the chest, killing him. Hernandez drove the two to Rascal's house and then went home. (*Hernandez I*.)

---

[2] As the truth of the facts of the crime recited in *Hernandez I* are not necessary for our resolution of this appeal, we summarize them only for the basis of Hernandez's conviction. (See *People v. Woodell* (1998) 17 Cal.4th 448, 459–460.)

3

**2.     *Hernandez's first petition for resentencing***

After Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) took effect, Hernandez filed on April 8, 2019 a petition for resentencing under section 1172.6.  Hernandez asserted he had been convicted of second degree murder "pursuant to the felony murder rule or the natural and probable consequences doctrine" and could not now be convicted of murder because of changes made to sections 188 and 189.

The superior court reviewed the jury instructions as well as the reporter's transcript of the instructions as read to the jury and of closing arguments at Hernandez's trial.  The court found Hernandez was not tried or convicted under either the felony murder rule or the natural and probable consequences doctrine.  Based on that determination, the court denied the petition.

Hernandez appealed.  His appointed counsel filed an opening brief raising no issues and asking this court independently to review the record under *People v. Wende* (1979) 25 Cal.3d 436.  This court affirmed the order denying the petition.  (*People v. Hernandez* (July 19, 2021, B309075) [nonpub. opn.] (*Hernandez II*).)

**3.     *Hernandez's second petition for resentencing***

After Senate Bill No. 775 (2020−2021 Reg. Sess.) (Senate Bill 775) took effect, Hernandez filed on January 5, 2022 a new petition for resentencing under section 1172.6.  The superior court summarily denied the petition, reasoning it was a successive claim and barred by collateral estoppel.

On appeal, the parties agreed the petition was not barred. However, they disagreed about whether Hernandez had otherwise made a prima facie showing.  A different panel of this court reversed the order summarily denying Hernandez's

4

petition. (See *People v. Hernandez* (Feb. 7, 2024, B323919) [nonpub. opn.] (*Hernandez III*).) We remanded the case and directed the superior court to consider whether to issue an order to show cause and hold an evidentiary hearing.

On remand, Hernandez filed a brief arguing he is entitled to an evidentiary hearing because the standard jury instructions were not tailored to fit the specifics of aiding and abetting implied malice murder. According to Hernandez, this allowed the jury to impute malice to him based on his participation in a crime.

The superior court denied the petition, concluding Hernandez failed to make a prima facie showing. The court explained Hernandez could have raised the instructional error issue in his direct appeal, as the law at the time precluded imputing malice to an aider and abettor outside the natural and probable consequences doctrine. The court concluded Hernandez failed to make a prima facie showing that he could not be convicted of murder "because of" the 2019 amendments to sections 188 and 189. The court also suggested the instructions given to Hernandez's jury were lawful.

Hernandez timely appealed.

## DISCUSSION

The parties agree—as do we—the superior court erred to the extent it concluded Hernandez could not rely on issues he could have raised in his direct appeal from his conviction. In fact, while this appeal was pending, the California Supreme Court held section 1172.6 does not render ineligible for relief petitioners who could have raised their challenges to imputed malice on direct appeal. (*People v. Lopez* (2026) 19 Cal.5th 639, 649.)

5

Nevertheless, the parties disagree as to whether reversal is required. Hernandez contends he made a prima facie showing because the record of conviction does not conclusively rule out the possibility the jury convicted him under a theory that is no longer valid. Specifically, he argues the instructions allowed the jury to convict him of aiding and abetting implied malice murder without having to find he possessed malice.

The Attorney General argues, instead of determining whether the jury instructions conclusively show Hernandez is ineligible for relief, we should ask whether it is reasonably likely the jurors understood the instructions as permitting conviction on an improper theory. According to the Attorney General, Hernandez failed to make a prima facie showing because it is not reasonably likely the jurors understood the instructions as allowing them to convict Hernandez by imputing malice to him.

We need not determine which standard is correct because Hernandez is ineligible for relief under both.

1. ***Section 1172.6***

Senate Bill 1437 took effect on January 1, 2019. (See Stats. 2018, ch. 1015, § 4.) It limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder to ensure a person's sentence is commensurate with his or her individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843; *People v. Lewis* (2021) 11 Cal.5th 952, 957, 971 (*Lewis*).)

The Legislature then passed Senate Bill 775. Among other changes to the law, the bill eliminated convictions for murder based on a theory under which malice is imputed to a person based solely on that person's participation in a crime. Senate

6

Bill 775 took effect on January 1, 2022. (See Stats. 2021, ch. 551, § 2.)

As relevant here, individuals convicted of murder under a now-invalid theory may petition to vacate their convictions and be resentenced. (§ 1172.6, subd. (a).) If the petitioner makes a prima facie showing of entitlement to relief, the superior court must issue an order to show cause and hold an evidentiary hearing. At the hearing, the prosecution bears the burden of proving beyond a reasonable doubt that the petitioner is guilty of (in this case) murder under the amended law. (§ 1172.6, subds. (c), (d)(3).)

"The record of conviction will necessarily inform the trial court's prima facie inquiry under section 117[2.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis, supra*, 11 Cal.5th at p. 971.) The jury instructions are part of the record of conviction, because the instructions "given at a petitioner's trial may provide 'readily ascertainable facts from the record' that refute the petitioner's showing, and reliance on them to make the eligibility or entitlement determinations may not amount to 'factfinding involving the weighing of evidence or the exercise of discretion,'" which may not take place until after an order to show cause issues. (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, abrogated on other grounds in *Lewis, supra*, 11 Cal.5th 952; see *People v. Estrada* (2022) 77 Cal.App.5th 941, 943–944, 946 [jury instructions showed trial court never instructed the jury on the natural and probable consequences doctrine; summary denial of petition affirmed].)

**2.** ***The instructions required the jury to find Hernandez personally harbored malice***

In *People v. Reyes* (2023) 14 Cal.5th 981 (*Reyes*), the California Supreme Court confirmed aiding and abetting implied malice murder is a valid theory of murder, and it clarified the elements required to convict a defendant under that theory. The court explained, " 'In the context of implied malice, the actus reus required of the perpetrator is the commission of a life-endangering act.  For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life-endangering act.  Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act.  The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life.' " (*Id.* at pp. 990–991, quoting *People v. Powell* (2021) 63 Cal.App.5th 689, 712–713, fn. omitted (*Powell*).)

Hernandez does not dispute that aiding and abetting implied malice murder remains a valid theory.  However, he contends the instructions given at his trial contained an ambiguity that allowed the jury to convict him under that theory by imputing malice to him.

The court in Hernandez's trial instructed the jury with the standard CALCRIM instructions on murder and aiding and abetting.  It did not specifically tailor the instructions for aiding and abetting implied malice murder.

As to aiding and abetting generally, the court instructed the jury with CALCRIM No. 400, which stated, "A person is equally guilty of the crime whether he committed it personally or aided and abetted the perpetrator who committed it." The court also instructed the jury with CALCRIM No. 401, which described the elements required to find a defendant aided and abetted an intended crime. The relevant portion of the instruction provided as follows:

> "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:
>
> "[¶] 1. The perpetrator committed the crime;
>
> "[¶] 2. The defendant knew that the perpetrator intended to commit the crime;
>
> "[¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime;
>
> "[¶] AND
>
> "[¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.
>
> "[¶] Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

On the issue of implied malice, the court instructed the jury with CALCRIM No. 520 as follows: "The defendant acted with implied malice if: [¶] 1. He intentionally committed an act; [¶] 2. The natural consequences of the act were dangerous to human

9

life; [¶] 3. At the time he acted, he knew his act was dangerous to human life; [¶] AND [¶] 4. He deliberately acted with conscious disregard for human [life]."

Contrary to Hernandez's contentions, these instructions did not allow the jury to convict him of murder by imputing malice to him. CALCRIM No. 401 told the jury aiding and abetting requires: (1) the "defendant knew that the perpetrator intended to commit *the crime*"; (2) "the defendant intended to aid and abet the perpetrator in committing *the crime*"; and (3) the defendant "did in fact aid and abet the perpetrator's commission of *the crime*." (Italics added.) Where, as here, the defendant is accused of aiding and abetting murder, "the crime" plainly refers to murder. (See *Powell, supra*, 63 Cal.App.5th at p. 714 ["As relevant here, 'the crime' would be murder."].) Moreover, because the People charged Hernandez with a single crime—murder— there is no risk the jury interpreted the phrase to mean a crime other than murder. Even if the jury understood "the crime" to refer specifically to "implied malice murder," CALCRIM No. 401 required it to find Hernandez (1) knew the perpetrator intended to commit implied malice murder; (2) intended to aid and abet the perpetrator in committing implied malice murder; and (3) did in fact aid and abet the perpetrator's commission of implied malice murder. Our Supreme Court has explained, "one cannot knowingly and intentionally help another commit an unlawful killing without acting with malice." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1123.) An implied malice murder is a type of unlawful killing. Accordingly, to convict Hernandez as an aider and abettor of implied malice murder, the instructions required the jury to find he personally possessed malice.

Hernandez's reliance on *Powell, supra*, 63 Cal.App.5th 689, *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*)*,* and *People v. Maldonado* (2023) 87 Cal.App.5th 1257 (*Maldonado*) is misplaced.

In *Powell, supra*, 63 Cal.App.5th 689, a jury convicted the defendant of second degree murder based on evidence showing he was a member of a group that beat and stabbed a man to death. (*Id*. at p. 692.) On appeal, the defendant argued the standard CALCRIM instructions allowed the jury to convict him of aiding and abetting implied malice murder, which he asserted is an invalid theory. (*Id*. at pp. 706–709.) The court rejected the argument that aiding and abetting implied malice murder is an invalid theory. However, it noted the instructions had not been tailored to that theory of murder. (*Id*. at p. 714.) The court explained "the aider and abettor of implied malice murder need not intend the commission of *the crime* of murder," as CALCRIM No. 401 requires. (*Powell*, at p. 714.) "Rather, relative to the aider and abettor's intent, he or she need only intend the commission of the perpetrator's *act*, the natural and probable consequences of which are dangerous to human life, intentionally aid in the commission of that *act* and do so with conscious disregard for human life."[3] (*Ibid*.)

---

[3]    The *Powell* court ultimately concluded the error was harmless because the prosecutor did not pursue an aiding and abetting implied malice theory, there was "compelling evidence" supporting the theories the prosecutor did pursue, and the instructional error was unimportant in relation to everything else the jury considered. (*Powell, supra*, 63 Cal.App.5th at pp. 716–718.)

11

We agree with the *Powell* court that CALCRIM No. 401 is not tailored to the crime of implied malice murder.[4]  However, the *Powell* court did not consider the implications of the lack of tailoring, let alone hold it allows a jury to impute malice to the defendant.  If anything, the lack of tailoring worked to Hernandez's benefit.  For example, with respect to Hernandez's knowledge of the perpetrator's intent, a tailored instruction would have required the jury to find only that Hernandez knew the perpetrator intended to commit the act that caused death. (See *Reyes, supra,* 14 Cal.5th at pp. 990–991.)  CALCRIM No. 401, in contrast, required the jury to find Hernandez knew the perpetrator intended to commit "the crime," i.e. implied malice murder.  Considered with the instruction on implied malice— CALCRIM No. 520—this required the jury to find Hernandez knew the perpetrator intended to commit the act that caused death.  However, it also required the jury to find Hernandez knew (1) the perpetrator knew the act was life-endangering and (2) the perpetrator was deliberately acting with conscious disregard for life.  Therefore, CALCRIM No. 401 actually required a greater showing than the law required to convict Hernandez of aiding and abetting implied malice murder.[5]

---

[4]     In 2023, the Judicial Council added an instruction on aiding and abetting implied malice murder, CALCRIM No. 526. The instruction closely tracks the language in *Reyes, supra,* 14 Cal.5th 981.

[5]     CALCRIM No. 401 did not explicitly require the jury to find Hernandez knew the act was dangerous to human life or that Hernandez was acting with conscious disregard for human life, as required for aiding and abetting implied malice murder.  (See *Reyes, supra,* 14 Cal.5th at pp. 990–991.)  However, both were

12

The court in *Langi, supra*, 73 Cal.App.5th 972 reached a different conclusion with respect to the CALJIC counterpart to CALCRIM No. 401. However, it is distinguishable. As in this case, *Langi* concerned an appeal of an order denying a section 1172.6 petition at the prima facie stage. (See *Langi*, at p. 977.) The jury convicted the defendant of second degree murder, robbery, and assault based on evidence that he was a member of a group that robbed and beat several victims. (*Id.* at pp. 975–977.) One of the victims died after someone in the defendant's group punched him, causing him to fall and hit his head. (*Id.* at p. 975.) The trial court instructed the jury with the standard CALJIC instruction on aiding and abetting—CALJIC No. 3.01—as follows: " 'A person aids and abets the commission . . . of a crime when he or she: [¶] (1) With knowledge of the unlawful purpose of the perpetrator, and [¶] (2) With the intent or purpose of committing or encouraging or facilitating the commission of the crime, . . . [¶] (3) By act or advice aids, promotes, encourages or instigates the commission of the crime.' " (*Langi,* at p. 981.)

The Court of Appeal concluded the defendant made a prima facie showing under section 1172.6. (*Langi, supra*, 73 Cal.App.5th at p. 984.) The court explained CALJIC No. 3.01 contains an "ambiguity" that allowed the jury to convict the defendant of aiding and abetting second degree murder without

_____

implicit in the other findings required under CALCRIM No. 401. Specifically, the jury necessarily found Hernandez knew the act was dangerous to human life if it found he knew the perpetrator knew the act was dangerous to human life. Moreover, the jury must have found Hernandez was acting with conscious disregard for human life if it found he intentionally helped the perpetrator commit a dangerous act knowing the perpetrator was acting with conscious disregard for human life.

13

finding he personally acted with malice. (*Langi*, at p. 982.) The court noted the instruction required the jury to find the defendant had knowledge only of the direct perpetrator's "unlawful purpose," which under the facts of the case might have been to strike, injure, or embarrass the victim. (*Ibid*.) Moreover, the instruction did not require the aider and abettor to act with conscious disregard for human life. Therefore, the court reasoned, the jury could have convicted the defendant of aiding and abetting second degree murder if it found he "intended to encourage the perpetrator's intentional act—in this case, punching [the victim]—whether or not appellant intended to aid or encourage [the victim's] killing, and whether or not he personally knew of and disregarded the risk of such a killing." (*Id*. at pp. 982–983.)

Assuming *Langi* was correctly decided, it is distinguishable. The *Langi* court determined the phrase "unlawful purpose" in CALJIC No. 3.01 was ambiguous because it might have referred to something other than the perpetrator's intent to commit murder, such as an intent to commit a lesser crime or motive. (*Langi, supra*, 73 Cal.App.5th at pp. 982–983.) CALCRIM No. 401 contains similar language, stating "[s]omeone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose." However, unlike in *Langi*, the People did not charge Hernandez with crimes other than murder. Therefore, there was no risk the jury understood "unlawful purpose" in CALCRIM No. 401 to refer to an intent to commit a lesser crime.

Nor was there a risk the jury convicted Hernandez based solely on his knowledge of the perpetrator's motive. The California Supreme Court has rejected the argument that

14

a jury might understand "purpose" in CALJIC No. 3.01 to refer to something less than intent. (See *People v. Hardy* (2018) 5 Cal.5th 56, 96 ["If anything, 'purpose' is a higher standard than 'intent.' "].) We see no reason why the same would not be true of "purpose" in CALCRIM No. 401. In any event, unlike CALJIC No. 3.01, CALCRIM No. 401 also explicitly states an aider and abettor must know "the perpetrator intended to commit the crime." In this case, "the crime" could have referred only to murder. Therefore, even if the jury understood "unlawful purpose" to refer to the perpetrator's motive, the jury still had to find Hernandez knew the perpetrator intended to commit murder. For the reasons we discussed, this precluded the jury from imputing malice to Hernandez.

To the extent *Maldonado*, *supra*, 87 Cal.App.5th 1257 suggests otherwise, we decline to follow it. In *Maldonado,* the trial court instructed the jury with CALCRIM No. 401, and the jury convicted the defendant of first degree murder, possibly under a lying-in-wait theory. The defendant appealed the denial of his section 1172.6 petition at the prima facie stage. (*Maldonado*, at pp. 1259–1260.) The Court of Appeal reversed, holding the record of conviction did not conclusively establish the defendant had not been convicted under an imputed malice theory. (*Id.* at pp. 1268–1269.) The court explained, "using *Langi*'s reasoning, the jury could have construed the instructions such that, 'to be guilty as an aider and abettor of [lying in wait first degree] murder, appellant need only have intended to encourage the perpetrator's intentional act—in this case, [a surprise attack on the victim]—whether or not appellant intended to aid or encourage [the victim's] killing, and whether

15

or not he personally knew of and disregarded the risk of such a killing.' " (*Id*. at p. 1266.)

We do not find *Maldonado* persuasive. The defendant in *Maldonado* was charged only with murder, and the court mentioned in passing the fact that CALCRIM No. 401 required the jury to find he knowingly and intentionally aided and abetted "the crime." (See *Maldonado, supra*, 87 Cal.App.5th at p. 1267.) The court suggested that requirement was not sufficient because it did "not specify that the perpetrator must have *intended* that the duration of the lying in wait be substantial enough to show a state of mind equivalent to deliberation or premeditation, but just that the duration in fact was so substantial." (*Ibid*.) The fact that CALCRIM No. 401 does "not specify that the perpetrator must have *intended* that the duration of the lying in wait be substantial enough" is relevant to whether the defendant is guilty of first degree lying-in-wait murder, which was the crime at issue in *Maldonado*. However, it says nothing about whether the instruction allowed the jury to convict the defendant under an imputed malice theory.

Here, for the reasons we discussed, the instructions did not allow the jury to convict Hernandez of murder by imputing malice to him. Therefore, the record conclusively refutes Hernandez's argument and it is not reasonably likely the jury understood the instructions in the way he suggests. Because the trial court did not instruct the jury on any other invalid theories of murder—felony murder or the natural and probable consequences doctrine—Hernandez has not made a prima facie showing under section 1172.6. Accordingly, the superior court properly denied his petition at the prima facie stage.

16

**DISPOSITION**

We affirm the order.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, Acting P. J.

We concur:


ADAMS, J.


HANASONO, J.